IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MOHAMMED BIN SAUD AL-QASIMI,   §
                              §
            Plaintiff,         §
                              §
v.                             §
                              §   CIVIL ACTION NO. H-08-1523
MIKE PALLONE, KAREN PALLONE,   §
ROSE HILL ARABIANS, INC., and  §
PALLONE VETERINARY HOSPITAL,   §
INC.,                          §
                              §
            Defendants.        §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mohammed Bin Saud Al-Qasimi, brings this action against defendants, Mike Pallone, Rose Hill Arabians, Karen Pallone, and Pallone Veterinary Hospital, Inc. (PVH), for breach of contract, rescission of contract, mutual mistake, breach of implied warranty of fitness and merchantability, violation of the Texas Deceptive Trade Practices Act, and common law fraud and deceit arising from his purchase of an Arabian stallion in Texas. Pending before the court are Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 11) pursuant to Federal Rule of Civil Procedure 12(b)(2) and Defendants' Objections to Affidavit of Kristen Cordianni (Docket Entry No. 16). For the reasons explained below, defendants' motion to dismiss will be granted in part and denied in part, and defendants' objections to the affidavit of Kristen Cordianni will be declared moot.

## I.  **Plaintiff's Factual Allegations**

Plaintiff makes the following factual allegations:  Plaintiff is a citizen of the United Arab Emirates.[1]  The individual defendants are citizens of the State of Arkansas, Rose Hill Arabians is an assumed name under which the individual defendants do business, and PVH is a corporation organized under Arkansas law. The registered agent for PVH is Mike Pallone.[2]  Plaintiff purchased the Arabian Stallion, GATSBY CC, for $250,000, on or about January 19, 2006, by wiring purchase money to defendants' agent in Texas, Michael Byatt.  The registered owner of GATSBY CC at the time of the purchase was PVH.  Prior to purchase plaintiff's agent, Scott Allman, saw GATSBY CC at Byatt's farm in New Ulm, Texas, where the stallion was stabled.  Plaintiff alleges that GATSBY CC was represented as having no defects and suitable for breeding but that when the sale took place defendants knew that GATSBY CC and his sire had sired foals having "Lavender Foal Syndrome," a lethal condition that renders foals unable to stand and nurse and GATSBY CC worthless as a breeding stallion.[3]

## II.  **Standard of Review**

When a foreign defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the

---

[1]Plaintiff, Mohammed Bin Saud Al-Qasimi's, Original Complaint and Jury Demand, Docket Entry No. 5, p. 1 ¶ 1.

[2]Id. at 2-3 ¶¶ 2-5.

[3]Id. at 3-4 ¶¶ 6-7.

plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S.Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" Id. (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S.Ct. 322 (1994)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344 (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). However, the court must accept as true uncontroverted allegations in the plaintiff's complaint and must resolve all factual conflicts contained in the parties' evidence in the plaintiff's favor. See Adams v. Unione Mediterranea Di Sicurta, 364 F.3d 646, 650 (5th Cir.), cert. denied, 125 S.Ct. 478 (2004).

### III. **Analysis**

Asserting that they are all residents of the State of Arkansas, defendants argue that this action should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction because

> [p]laintiff makes no allegation or contention that any of
> the [d]efendants have had continuous or systematic
> contacts within the State of Texas so as to establish
> general jurisdiction by this Court over them.  There is
> also no basis for the [c]ourt to exercise specific
> jurisdiction over any [d]efendant in this case.[4]

Plaintiff responds that "personal jurisdiction of the Defendants is proper by reason of minimum contacts and the exercise of jurisdiction in Texas comports with fair play and substantial justice."[5]

## A.  Applicable Law

A federal district court has personal jurisdiction over a nonresident defendant to the same extent as a state court in the state in which the district court is located -- in this case, Texas.  Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with constitutional due process guarantees.  See Moki Mac River Expeditions v. Drugg, 221 S.W. 3d 569, 574 (Tex. 2007) (citing Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990)). The Texas long-arm statute authorizes service of process on nonresidents "[i]n an action arising from the nonresident's business in this state."  Tex. Civ. Prac. & Rem. Code § 17.043.

---

[4]Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 11, pp. 1-2.

[5]Plaintiff's Motion and Brief in Opposition to the Defendants' Motion to Dismiss, Docket Entry No. 14, p. 5.

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident
>
> (1) "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; [or]
>
> (2) commits a tort in whole or in part in this state.

Id. at § 17.042.  The Texas Supreme Court has stated that the long-arm statute's broad "doing-business" language allows the statute to "'reach as far as the federal constitutional requirements of due process will allow.'"  Moki Mac, 221 S.W.3d at 575 (quoting Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991)).  See also Schlobohm, 784 S.W.3d at 357 (holding that the limits of the Texas long-arm statute are coextensive with the limits of constitutional due process guarantees), and U-Anchor Advertising, Inc. v. Burt, 553 S.W.2d 760, 762 (Tex. 1977), cert. denied, 98 S.Ct. 1235 (1978) (same).  Since defendants do not dispute that plaintiff's claims fall within the language of the long-arm statute, the court need only consider whether the assertion of personal jurisdiction over them comports with federal due process guarantees.  Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when "the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'"  Moki Mac, 221 S.W.3d at 575 (quoting International Shoe Co. v. State of Washington, Office of

-5-

Unemployment Compensation and Placement, 66 S.Ct. 154, 158 (1945),
and Milliken v. Meyer, 61 S.Ct. 339, 343 (1940)).

**B.    Evidence Submitted by the Parties**

1.    Plaintiff's Evidence

Plaintiff  alleges  that  the  court  may  assert  personal
jurisdiction over  the  defendants  because  they  each  purposefully
availed themselves of the laws of Texas by

> A.    Doing business in Texas by hiring and contracting an
> agent,  Michael  Byatt,  a  resident  citizen  of  Houston,
> Texas, to sell the horse, GATSBY CC, the subject of this
> case;  stabling  and  caring  for  such  horse  in  Texas;
> negotiating  and  entering  into  the  sales  contract  in
> Texas;  consummating  the  contract  in  Texas  by  selling  the
> horse through Michael Byatt; performing the contract in
> Texas  through  Michael  Byatt;  shipping  the  horse  to
> Plaintiff through the port of Houston; receiving payment
> for the horse in Texas; paying the Agent, Michael Byatt,
> for his services in Texas; and being paid and receiving
> net funds for the horse from a bank account in Texas,
> through Michael Byatt. . .
>
> B.    Committing  a  tort  or  torts,  the  subject  of  this
> case, in part, in Texas.  This involves fraud, deceit,
> breaches of Warranties, and Deceptive Trade Practices in
> connection with the sale of the Arabian stallion, GATSBY
> CC. . .[6]

These jurisdictional allegations are supported by sworn statements
from Michael Byatt and Scott Allman.

Byatt states that he has been in the horse business for years.
In January of 2006 he was contacted by Scott Allman who asked Byatt
if he knew of any straight Egyptian Arabian stallions of excellent
quality that might be available for purchase by a client of his

---

[6]Plaintiff, Mohammed Bin Saud Al-Qasimi's, Original Complaint
and Jury Demand, Docket Entry No. 5, pp. 1-2 ¶ 1.

from the Middle East.  Byatt mentioned GATSBY CC, a horse that he had seen at two or three shows and had also seen when he visited Rose Hill Arabians farm in Arkansas in September of 2005.  Allman told Byatt that he was coming to the United States from Europe and would like to look at stallions that might be available.  Byatt contacted Mike Pallone in Arkansas, advised him that a potential buyer was coming to Texas to look at Egyptian Arabian stallions, and that he had mentioned GATSBY CC to the buyer's agent.  Byatt and Pallone then agreed that Pallone would transport GATSBY CC to Byatt's farm in Texas where Byatt would take possession of the horse and would stable, care for, and show the horse to the potential buyer.  Byatt and Pallone also agreed that Byatt would act as agent for the horse's owner, would be paid for stabling the horse and, if the horse sold, would be paid 20% of the gross sales price as a sales commission.  GATSBY CC was shipped to Texas, and Allman -- acting as agent for the plaintiff -- inspected GATSBY CC at Byatt's Texas farm and agreed to purchase GATSBY CC for $250,000.  Shortly thereafter, the plaintiff wired the funds required to pay the purchase price for GATSBY CC to Byatt's farm bank account in Houston, Texas.  Byatt paid $25,000 to Allman as the purchaser's agent, paid himself $25,000 as the seller's agent, and transferred the remaining $200,000 to Pallone in Arkansas.[7] Byatt arranged to ship GATSBY CC from Texas to Europe.

_____

[7]Affidavit of Michael Byatt, attached to Plaintiff's Motion and Brief in Opposition to the Defendants' Motion to Dismiss, Docket Entry No. 14.

In his acknowledgment Allman states that on or about January of 2006 he contacted Michael Byatt in Texas to ask if Byatt knew of any excellent Egyptian Arabian stallions that might be available for purchase by his client, the plaintiff in this action.   In response, Byatt sent Allman information about GATSBY CC.   Allman traveled from his home in Europe to Byatt's farm in Texas to see GATSBY CC, and upon seeing the horse agreed to purchase it for $250,000 on the plaintiff's behalf.   Subsequently, the plaintiff wired funds equal to the purchase price to Byatt's bank account in Texas.   Byatt distributed the funds from his Texas bank account and made all the arrangements necessary to ship the horse to Europe.[8]

### 2.   Defendants' Evidence

In support of their motion to dismiss for lack of personal jurisdiction defendants submit the affidavit of Dr. Michael B. Pallone in which he states:  (1) All the defendants in this action are residents of the State of Arkansas; (2) defendant Rose Hill Arabians, Inc. had no involvement in the transaction other than, on one occasion, sending information from its place of business in Arkansas to plaintiff's representative outside the State of Texas regarding horses stabled at Rose Hill, including GATSBY CC; (3) the horse in question was owned by PVH; (4) acting on behalf of PVH, he (i.e., Michael Pallone) contacted Byatt to come to Arkansas and

---

[8]Acknowledgement of Scott Allman, attached to Plaintiff's Motion and Brief in Opposition to the Defendants' Motion to Dismiss, Docket Entry No. 14.

look at GATSBY CC to evaluate the stallion for possible sale; (5) Byatt later notified him about a potential buyer; (6) GATSBY CC was delivered to Byatt's facility in Texas where the stallion was inspected by plaintiff's representative and arrangements were made to ship GATSBY CC to plaintiff in the United Arab Emirates; (7) payment for GATSBY CC was wired to PVH's bank account in Arkansas; and (8) no contract or agreement was signed in connection with the sale of GATSBY CC.[9]

**C.   Application of the Law to the Facts**

The court must first determine whether defendants had minimum contacts with the State of Texas.  If so, the court must determine whether exercise of jurisdiction would comport with traditional notions of fair play and substantial justice.  See BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002).

1.   Minimum Contacts

The purpose of a minimum-contacts analysis is to protect the defendants from being haled into court when their relationship with Texas is too attenuated to support jurisdiction.  See Schlobohm, 784 S.W.2d at 357.  The court's analysis focuses on the defendants' activities and expectations, and jurisdiction cannot be asserted over defendants absent evidence that the defendants purposefully

---

[9]Affidavit of Dr. Michael B. Pallone in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Exhibit A attached to Brief in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 12.

availed themselves of the privilege of conducting activities in Texas, thus invoking the benefits and protections of Texas laws. Id. (citing Hanson v. Deckla, 78 S.Ct. 1228, 1239 (1958)). Defendants' activities, "whether they consist of direct acts within the forum or conduct outside the forum, must justify a conclusion that the defendant should reasonably anticipate being called into court there." Id. (citing World-Wide Volkswagen Corp. v. Woodson, 100 S.Ct. 559, 567 (1980)).

Personal jurisdiction based on a minimum-contacts analysis may be either general or specific.   See Schlobohm, 784 S.W.2d at 357. See also Dalton v. R. & W. Marine, Inc., 897 F.2d 1359, 1361-62 (5th Cir. 1990).  General jurisdiction arises from the defendants' general business contacts with the forum state regardless of whether the subject matter of the suit is related to those contacts.  Id. ("where the defendant's activities in the forum are continuing and systematic, jurisdiction may be proper without a relationship between defendant's particular act and the cause of action").  See also Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S.Ct. 1868, 1872 n.9 (1984).  Specific jurisdiction arises from the defendants' contacts with the forum that are related to the suit.  Id. ("where the activities of a defendant in a forum are isolated or disjointed . . . jurisdiction is proper if the cause of action arises from a particular activity.  In these cases jurisdiction is said to be specific.").  See also Helicopteros Nacionales, 104 S.Ct. at 1872 n.8.

Plaintiff argues that

> [h]ere, the Defendants not only solicited sales, but actually moved their product (GATSBY CC) to Texas, had him take up residence there, hired as Defendants' agent and had a systematic course of dealing with Michael Byatt, a Texas resident, to stable, care for, show, sell, ship, receive and distribute money resulting from the sale of Gatsby CC and this case arises out of this course of dealing in Texas and the sale in Texas. The Defendants' activities were purposely directed to Texas and defendants reaped the benefits of doing business in Texas in this case by stabling and selling Gatsby CC. Defendants purposely availed themselves of the privilege of conducting activities in Texas and the Defendants' liability in this case arises from and are related to those contacts.[10]

Although not expressly stated, plaintiff's assertion that the defendants had a systematic course of dealing with Michael Byatt in Texas appears to be an argument in support of the exercise of general jurisdiction, while plaintiff's assertion that the claims in this case arise out of defendants' sale of GATSBY CC in Texas appears to be an argument in support of the exercise of specific jurisdiction.

(a)   General Jurisdiction Analysis

General jurisdiction exists if the defendant's contacts with Texas constitute a "continuous and systematic" presence.   See Schlobohm, 784 S.W.2d at 357.   See also Helicopteros Nacionales, 104 S.Ct. at 1873-74.   The facts asserted in the statements submitted to the court by Byatt, Codianni, and Allman are not sufficient to demonstrate that defendants had "continuous and

---

[10]Id.

-11-

systematic" contacts with Texas required for the exercise of general jurisdiction over any of the defendants.

> As commentators have recognized, the continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum. The Supreme Court has upheld an exercise of personal jurisdiction when the suit was unrelated to defendant's contacts with a forum only once.

Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V., 249 F.3d 413, 419 (5th Cir.), cert. denied, 122 S.Ct. 646 (2001) (citing Perkins v. Benguet Consolidating Mining Co., 72 S.Ct. 413 (1952)).[11]  The Supreme Court's decision in Helicopteros Nacionales, 104 S.Ct. at 1873-74, illustrates the difficulty of establishing general jurisdiction over a nonresident defendant.  In Helicopteros Nacionales the defendant was a Colombian corporation that was sued in Texas for personal injuries arising out of the crash of one of its helicopters in Peru.  The defendant had negotiated the contract to provide helicopter services in Texas, purchased 80% of its helicopter fleet (for over $4.0 million) from a Texas company, sent its pilots to Texas for training, sent members of its management to Texas for technical consultations, and had accepted $5.0 million in payments from a Texas joint venture (in funds drawn on a Texas

---

[11]Perkins was a unique case in which a Philippine corporation set up operations in Ohio during the Japanese occupation of the Philippines.  During that time, the Philippine corporation conducted meetings in Ohio, maintained the corporation's records and bank accounts in Ohio, distributed salary checks drawn on Ohio banks, and made all of its important business decisions in the state.  The Supreme Court found that the Philippine corporation was subject to general jurisdiction in Ohio because it "ha[d] been carrying on in Ohio a continuous and systematic, but limited, part of its general business."  72 S.Ct. at 414.

bank).    Nevertheless,  the  Supreme  Court  held  that  general jurisdiction was lacking.  See id.

In Submersible Systems, 249 F.3d at 420-21, the Fifth Circuit considered whether general jurisdiction could be asserted over a Mexican company based on the existence of "continuous and systematic" contacts with the United States pursuant to Fed. R. Civ. P. 4(k)(2).  The company's contacts with the United States included the construction of a marine drilling rig in a Mississippi shipyard, an office at the Mississippi shipyard to oversee the construction project, and a bank account in Texas.  The Mexican company  purchased  spare  parts  and  entire  vessels  in  the United States, its vessels occasionally docked at United States ports, and some of its employees attended an annual conference in Texas.  Nevertheless, the Fifth Circuit concluded that "[t]hese contacts with the United States are, at best, sporadic and of small consequence" and "are not continuous and systematic."  Id. at 421.

Plaintiff in this case has alleged that defendants had a single contact with Texas represented by their agreement with Byatt that he would attempt to negotiate a sale of GATSBY CC and would stable and care for the horse while attempting to sell it.  When measured against the contacts rejected by the Supreme Court in Helicopteros Nacionales, 104 S.Ct. at 1873-74, and by the Fifth Circuit in Submersible Systems, 249 F.3d at 420-21, plaintiff's allegations fall far short of the "continuous and systematic" contacts needed to support general jurisdiction.  Because plaintiff

-13-

has failed to show that any defendant had continuous and systematic contacts with Texas, the court concludes that the plaintiff has failed to make a <u>prima facie</u> showing of general personal jurisdiction over any of the defendants named in this action.

(b)  Specific Jurisdiction Analysis

Because an evidentiary hearing has not been held in this case, for the court to exercise specific jurisdiction the plaintiff only needs to make a <u>prima facie</u> showing that (1) each defendant had minimum contacts with Texas by purposefully availing the privilege of conducting activities here, and (2) the plaintiff had a cause of action arising out of each such defendant's individual forum-related contacts. <u>See</u> <u>Guidry v. U.S. Tobacco Co., Inc.</u>, 188 F.3d 619, 625 (5th Cir. 1999).  If plaintiff satisfies this burden, the burden shifts to defendants to defeat jurisdiction by showing that its exercise would be unfair or unreasonable.  <u>Id.</u> at 630.

#### (1)  Purposeful Availment

The "purposeful availment" analysis used by Texas courts has three aspects:

> First, only the defendant's forum-state contacts matter, not anyone else's . . . Second, the contacts must be purposeful, not merely random, isolated, or fortuitous . . . Third, a nonresident defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction, thus impliedly consenting to its laws.

<u>IRA Resources, Inc. v. Griego</u>, 221 S.W.3d 592, 596 (Tex. 2007).

(i)   Was Defendants' Own Conduct Sufficient to
          Trigger Specific Jurisdiction?

"The first element of purposeful availment is that a defendant can only trigger specific jurisdiction through its own conduct, not the unilateral acts of third parties." IRA Resources, 221 S.W.3d at 596.   Nevertheless, under Texas law the requirements for specific jurisdiction

> are met when the defendant, personally or through an
> agent, is the author of an act or omission within the
> forum state, and the petition states a cause of action in
> tort arising from such conduct.   The act or omission
> within the state is a sufficient basis for the exercise
> of jurisdiction to determine whether or not the act or
> omission gives rise to liability in tort.

Arterbury v. American Bank and Trust Co., 553 S.W.2d 943, 948 (Tex. Civ. App. -- Texarkana 1977, no writ).   In Arterbury the plaintiff sued a Louisiana corporation for wrongful repossession of a vehicle in Texas.   The parties did not dispute that the corporation had hired agents in Texas to repossess the vehicle in Texas.   Id. at 945-46.   The trial court determined that the repossession was lawful, and therefore the Texas court lacked jurisdiction over the corporation.   Id.   The appellate court reversed holding that (1) the trial court had incorrectly resolved the jurisdictional issue by determining the merits of the action, and (2) jurisdiction could properly be asserted over the corporate defendant because the corporation had purposefully hired agents in Texas to repossess the vehicle and, therefore, established minimum contacts with Texas. Id. at 948-49.   See also Baldwin v. Household International, Inc.,

-15-

36 S.W.3d 273, 277 (Tex. App. -- Houston [14th Dist.] 2001, no
pet.) (assertion of specific jurisdiction over a tort defendant is
proper when "the defendant, personally or through an agent, is the
author of an act or omission within the forum state, and the
petition states a cause of action in tort arising from such
conduct").   Because undisputed evidence before the court
establishes that Mike Pallone, acting as PVH's president and
employee, hired Byatt in Texas not only to market GATSBY CC to a
prospective buyer but also to stable GATSBY CC and to negotiate and
consummate the sale of GATSBY CC to the plaintiff, the court
concludes that plaintiff has made a prima facie showing that Mike
Pallone, acting on behalf of PVH, hired an agent in Texas to market
and sell GATSBY CC in Texas.

Plaintiff alleges that GATSBY CC was presented in Texas as
having no defects and suitable for breeding, but that the
defendants knew that GATSBY CC carries a genetic defect that
renders him worthless as a breeding stallion.[12]  As evidence that
defendants acting through their agent, Byatt, tortiously failed to
disclose GATSBY CC's genetic defect to Allman in Texas, plaintiff
submits Byatt's affidavit.

Byatt states in his affidavit that he is a resident citizen of
Houston, Harris County, Texas, and has been for many years,
"including all times involved in stabling, caring for, selling, and

---

[12] Id. at 4 ¶ 7.

shipping the horse, GATSBY CC, for "the owners of the horse."[13]
"The horse was in [his] care in Texas for about a month during the
time [he] was performing services for the owners as the agent."[14]
Byatt had seen GATSBY CC at "the Rose Hill Arabian farms in
Arkansas in September of 2005."[15]   In January of 2006 Byatt
contacted defendant Mike Pallone in Arkansas, advised him that he
had a potential buyer coming to Texas to look at Egyptian Arabian
stallions, and agreed with Pallone that Pallone "would transport
the horse to his [i.e., Byatt's] farm near New Ulm, Texas, where he
[Byatt] would take possession of the horse, stable, care for and
show the horse to the potential buyer."[16]

Byatt states that he and Pallone agreed that he (i.e, Byatt)
"would be the agent for the owner[,] . . . would be paid for
keeping the horse[,] and would receive 20% of the gross purchase
price as . . . commission when the horse sold."[17]  Byatt also stated
that "[t]he horse was shipped to [his] farm in Texas by Dr. Pallone
and ultimately sold [to] Scott Allman, acting as agent for the
buyer . . . [by Byatt], acting as agent for the seller."[18]  Byatt

---

[13]Affidavit of Michael Byatt, attached to Plaintiff's Motion
and Brief in Opposition to the Defendants' Motion to Dismiss,
Docket Entry No. 14, p. 1.

[14]Id.

[15]Id. at 2.

[16]Id.

[17]Id.

[18]Id.

states that shortly after he and Allman agreed on the purchase price of $250,000, the plaintiff "wired the $250,000 to [Byatt's] farm bank account in Houston, Texas,"[19] and that he (i.e, Byatt) "distributed the proceeds of the sale from [his] account in Houston as follows:  . . . $25,000 to Scott Allman, as agent for the buyer, . . . $25,000 [to Byatt], as agent for the seller, and . . . Dr. Mike Pallone $200,000 as seller, for his share of the sales price."[20]  Byatt also states that

> I have subsequently heard that GATSBY CC had sired a foal having a disorder called lavender foal syndrome.  Prior to these events, I had never heard of lavender foal syndrome.  I had no information one way or the other about this.  This was not told to me by Dr. Pallone, DVM, nor anyone connected to the sale of GATSBY CC.  Had I known of lavender foal syndrome, and that GATSBY CC had sired foals having lavender foal syndrome (assuming it is true that he did sire such foals), I would have disclosed this information to the buyer's agent.  I did not make any such disclosure because I did not know.[21]

Although Byatt's affidavit establishes that he served as agent for GATSBY CC's owner, it does not identify GATSBY CC's owner. However, since plaintiff's complaint alleges that at the material time GATSBY CC was owned by PVH,[22] and since Mike Pallone undisputedly states in his affidavit that "Gatsby CC was sold by

---

[19]Id. at 3.

[20]Id.

[21]Id. at 3-4 ¶ 4.

[22]Plaintiff, Mohammed Bin Saud Al-Qasimi's, Original Complaint and Jury Demand, Docket Entry No. 5, p. 3 ¶ 5 ("The registered agent for [PVH] is Mike Pallone.") and id. at ¶ 7 ("[PVH] was the registered owner of GATSBY CC at the material time.").

-18-

[PVH] to Mohammed Bin Saud Al-Qasimi,"[23] the court concludes that plaintiff has made a <u>prima facie</u> showing that Byatt served as an agent acting in Texas for PVH, which was GATSBY CC's owner at the material time, and that under Texas law Byatt's failure to disclose to Allman in Texas that GATSBY CC had sired a foal with lavender foal syndrome may be imputed to PVH.  See <u>Arterbury</u>, 553 S.W.2d at 948.  Since Mike Pallone undisputedly states in his affidavit that he carried out all of PVH's contacts with Byatt in Texas as the president and employee of PVH including, presumably, the failure to disclose to Byatt that GATSBY CC had sired a foal with lavender foal syndrome, the court concludes that PVH and Pallone have each engaged in conduct that may be sufficient to trigger the minimum contacts with Texas needed to support the court's exercise of personal jurisdiction over them.  See <u>Wein Alaska, Inc. v. Brandt</u>, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").  However, since plaintiff has failed to submit any evidence showing that Rose Hill Arabians or Karen Pallone had any involvement with Byatt or with GATSBY CC's sale, the court concludes that plaintiff has failed to make a <u>prima facie</u> showing that either of these two defendants engaged in any conduct capable of triggering minimum

---

[23]Affidavit of Dr. Michael B. Pallone in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Exhibit A attached to Brief in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 12, p. 1.

contacts with Texas needed to support the court's exercise of personal jurisdiction over them.

(ii) <u>Was PVH's and/or Mike Pallone's Conduct Purposefully Directed to Texas?</u>

The second element of the purposeful availment analysis requires the plaintiff to make a <u>prima facie</u> showing that the defendants' contacts with Texas were purposeful as opposed to random, fortuitous, or attenuated. <u>IRA Resources</u>, 221 S.W.3d at 597. A nonresident cannot escape a forum state's jurisdiction merely by having no office, employees, or agent for service of process there. <u>International Shoe</u>, 66 S.Ct. at 157 and 161. Therefore, defendants' evidence that PVH did not have an office, employees, or agent for service of process in Texas, while relevant, is not dispositive. Under Texas law evidence showing that a defendant has purposely directed marketing efforts to Texas that are intended to generate business there is sufficient to establish that the defendant has engaged in conduct purposefully directed to Texas. <u>See</u> <u>Moki Mac</u>, 221 S.W.3d at 575-77. For the defendants' acts to be considered purposeful, they must justify a conclusion that the defendants could reasonably anticipate being called into a Texas court. <u>See</u> <u>Antonio v. Marino</u>, 910 S.W.2d 624, 627-28 (Tex. App. -- Houston [14th Dist.] 1995, no writ) (holding that a nonresident shipowner whose agent assaulted and denied wages to seamen in a Texas port had not purposefully availed itself of Texas because the ship's location in Texas was merely fortuitous

since it had no regularly scheduled ports of call but, instead, merely followed a schedule established by a third-party charter).

Plaintiff is suing defendants based on their failure to disclose to Byatt in Texas -- who, in turn, failed to disclose to Allman in Texas -- the alleged fact that GATSBY CC sired a foal with lavender foal syndrome.  In his affidavit Mike Pallone admits that he contacted Byatt on behalf of PVH and asked Byatt to come to Arkansas to look at GATSBY CC and evaluate him for possible sale.[24] Mike Pallone also admits that when Byatt later notified him of a potential buyer, GATSBY CC was delivered to Byatt's farm in Texas so that Byatt could market GATSBY CC, and negotiate and close a sale of GATSBY CC.  Byatt states in his affidavit that Pallone agreed not only to deliver GATSBY CC to Texas, but also to pay Byatt for stabling GATSBY CC and to pay Byatt a twenty percent commission for GATSBY CC's sale.  The evidence before the court shows that Mike Pallone, acting on behalf of GATSBY CC's owner, PVH, intentionally contacted Byatt in Texas and asked Byatt to evaluate GATSBY CC for sale, and later intentionally delivered GATSBY CC to Byatt's farm in Texas for the purpose of marketing GATSBY CC to plaintiff.  Moreover, plaintiff presents evidence that GATSBY CC was presented as having no defects when, in fact, defendants knew that GATSBY CC had a genetic defect that made him worthless for breeding.  The court concludes that this evidence

---

[24]Id.

constitutes a _prima facie_ showing that these two defendants, PVH and Mike Pallone, purposely directed their efforts to market GATSBY CC to Texas such that they could reasonably anticipate being called into a Texas court.

(iii)  Did PVH and/or Mike Pallone Receive a Benefit, Advantage, or Profit from Their Contacts with Texas?

The third element of the purposeful availment analysis requires the plaintiff to make a _prima facie_ showing that defendants received a benefit, advantage, or profit from their contacts with Texas and that the benefit was derived from a their contacts with the forum.  See _IRA Resources_, 221 S.W.3d at 598.

(A)  Pallone Veterinary Hospital

Undisputed evidence before the court establishes that PVH realized a significant benefit from the actions of its agent, Byatt, in Texas, because Byatt not only stabled GATSBY CC, but also marketed GATSBY CC to a potential buyer, negotiated the sale of GATSBY CC, and received full payment of $250,000 for GATSBY CC's sale in Texas.  As the registered owner of GATSBY CC when the sale transpired, PVH unquestionably enjoyed the benefits and protections of Texas law in the process of selling GATSBY CC to the plaintiff. See _Arterbury_, 553 S.W.2d at 948 ("When [nonresident defendant] through its agent, came into Texas to effect a repossession or [plaintiff's] automobile, it did so purposefully in order to

-22-

advance its own interests.  While engaged in such conduct it enjoyed the benefit and protection of the laws of Texas, including the right to resort to our courts.").

### (B)  Mike Pallone

The brief filed in support of defendants' motion to dismiss argues that Mike Pallone, in his individual capacity, "had no involvement in this transaction whatsoever."[25]  Pallone states in his affidavit that "[a]ll my involvement with the sale of Gatsby CC was done in my capacity as President or as an employee of [PVH]."[26] Although defendants have not cited any law in support of their contention that Mike Pallone's position as president and employee of PVH shields him from personal liability for the claims alleged in plaintiff's complaint, this argument appears to invoke the fiduciary shield doctrine pursuant to which a "'corporate officer or employee' is shielded from jurisdiction where 'all of the individual's contacts with Texas were on behalf of his employer.'" Barnhill v. Automated Shrimp Corp., 222 S.W.3d 756, 767-68 (Tex. App. -- Waco 2007, no pet.) (quoting Wright v. Sage Engineering, Inc., 137 S.W.3d 238, 250 (Tex. App. -- Houston [1st Dist.] 2004,

---

[25]Brief in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 12, p. 3.

[26]Affidavit of Dr. Michael B. Pallone in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Exhibit A attached to Brief in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 12, p. 1.

pet. denied).  "However, this doctrine applies to the exercise of general jurisdiction, not specific."  Id. at 768.

Plaintiff's complaint alleges that Mike Pallone should be held individually liable for claims based on his allegedly fraudulent failure to disclose GATSBY CC's genetic defect.  Under Texas law "[a] corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a corporate representative."  Id. (citing Wright, 137 S.W.3d at 250).  By alleging that Mike Pallone fraudulently failed to disclose GATSBY CC's genetic defect to Byatt, PVH's agent in Texas, the pleadings assert a claim or claims against Mike Pallone for intentional torts grounded on his failure to disclose material information -- for which he may be held individually liable.  See id. at 769 (citing Ennis v. Loiseau, 164 S.W.3d 698, 707 (Tex. App. -- Austin 2005, no pet.).  In Ennis the court explained

> [o]ne's "status as an employee does not somehow insulate [him] from jurisdiction" and "there is no blanket protection from jurisdiction simply because a defendant's alleged acts were done in a corporate capacity."  A corporate officer may not escape liability where he had direct, personal participation in the wrongdoing, as to be the "'guiding spirit' behind the wrongful conduct" or the "'central figure' in the challenged corporate activity."  Hence, "it is the general rule in Texas that corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation."

Id. (citations omitted).

Plaintiff has alleged that Mike Pallone engaged in common law fraud and deceit by knowingly and recklessly failing to disclose to Byatt who, in turn, failed to disclose to Allman a material fact, i.e., GATSBY CC's genetic defect.   Because it is undisputed that all of PVH's contacts with Byatt were conducted by Mike Pallone, Mike Pallone is the only person would could possibly be responsible for failing to disclose the material fact of GATSBY CC's genetic defect to Byatt.   The court concludes that plaintiff's allegations that Mike Pallone committed intentional torts in Texas by hiring Byatt to market and sell GATSBY CC to him in Texas without disclosing that GATSBY CC had a genetic defect are sufficient to make a prima facie showing that Mike Pallone's intentional conduct triggered the minimum contacts with Texas needed to support the court's exercise of specific personal jurisdiction over him regardless of whether Mike Pallone realized an individually cognizable benefit, advantage, or profit.   See Wein Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

### (iv) Conclusions on Purposeful Availment

For the reasons explained above, the court concludes that plaintiff has made a prima facie showing that PVH and Mike Pallone each purposefully availed themselves of the privilege of conducting activities in Texas such that each of these defendants could

-25-

reasonably anticipate being called into a Texas court, but that plaintiff has not made a similar prima facie showing for the remaining two defendants, Karen Pallone and Rose Hill Arabians.

### (2)  Relatedness

As explained by the Texas Supreme Court in Moki Mac, 221 S.W.3d at 579, purposeful availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts." Id.  As the Texas Supreme Court has recently observed, "[t]he United States Supreme Court has provided relatively little guidance on the 'arise from or relate to' requirement, nor have we had occasion to examine the strength of the nexus required to establish specific jurisdiction." Id. at 576.  However, it is well that established exercise of specific jurisdiction requires a substantial connection between those contacts and the operative facts of the litigation. Id. at 584-85.

Asserting that the "operative facts of this case relate to the alleged failure of [PVH] to disclose an alleged genetic defect carried by Gatsby CC, and of an alleged misrepresentation regarding the fact that Gatsby CC was a carrier of this condition,"[27] defendants argue that

> [t]here is no substantial connection between the State of
> Texas and the operative facts in this case [because
> o]ther than the contact through Michael Byatt discussed

---

[27]Brief in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Docket Entry No. 12, p. 4.

> above, [d]efendant [PVH] did not have any conversation or
> discussion regarding the horse's condition at anytime
> with [p]laintiff or [p]laintiff's agent in Texas.[28]

The court disagrees and concludes, instead, that the relatedness
prong of the minimum-contacts analysis is satisfied with respect to
PVH because, for the reasons explained above in § C.1.(b)(1)(i),
Byatt's acts in Texas, including his failure to disclose GATSBY
CC's genetic defect to plaintiff, are imputable to PVH since
undisputed evidence before the court establishes that PVH hired
Byatt to act as its agent to market and sell GATSBY CC in Texas.
The court also concludes that the relatedness prong of the minimum-
contacts analysis is satisfied with respect to Mike Pallone
because, for the reasons explained above in § C.1.(b)(1)(iii)(B),
his failure to disclose GATSBY CC's genetic defect to Byatt forms
the basis of the court's conclusion that he purposefully availed
himself of the privilege of conducting activities in Texas.
Accordingly, the court concludes that there exists a substantial
connection between the operative facts of the claims asserted in
this action and the contacts of PVH and Mike Pallone with Texas.

## 2.   Fair Play and Substantial Justice

Having concluded that plaintiff has made a prima facie showing
that PVH and Mike Pallone had minimum contacts with the State of
Texas and that the claims asserted in plaintiff's complaint arise
from those contacts with Texas, the court must decide whether

---

[28]Id.

subjecting PVH and Mike Pallone to its jurisdiction would violate "traditional norms of fair play and substantial justice." See Moki Mac, 221 S.W.3d at 574. See also International Shoe, 66 S.Ct. at 158. Defendants have not presented any argument or evidence that this court's exercise of personal jurisdiction over them would be unfair or unjust. Accordingly, the court concludes that plaintiff has made a prima facie showing that PVH and Mike Pallone each had minimum contacts with Texas needed to support the exercise of specific personal jurisdiction, but that defendants have failed to make any showing that traditional notions of fair play and substantial justice would be violated because the court's exercise of jurisdiction over them would be unfair or unreasonable. See Central Freight Lines, Inc. v. APA Transport Corp., 322 F.3d 376, 384 (5th Cir. 2003) (citing Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2184-85 (1985).

### IV.  Conclusions

For the reasons explained above, the court concludes that PVH and Mike Pallone are subject to personal jurisdiction in Texas because PVH and Mike Pallone established minimum contacts with Texas as required by the Texas long-arm statute, the claims asserted in this action relate to those contacts, and the court's exercise of personal jurisdiction over PVH and Mike Pallone will not violate traditional notions of fair play and substantial justice, but that the two remaining defendants, Karen Pallone and

Rose Hill Arabians, are not subject to personal jurisdiction in Texas.   Accordingly, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 11) is **GRANTED** as to Karen Pallone and Rose Hill Arabians, but **DENIED** as to Pallone Veterinary Hospital, Inc. and Mike Pallone.   Because the court has ruled on the pending motion to dismiss without relying on the Affidavit of Kristen Codianni, Defendants' Objections to Affidavit of Kristen Cordianni (Docket Entry No. 16) are **MOOT**.

   **SIGNED** at Houston, Texas, on this 5th day of September, 2008.


                                    SIM LAKE
                        UNITED STATES DISTRICT JUDGE